DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Fulton County Court of Common Pleas, on remand, in which the court redetermined and redistributed the marital assets of the parties and awarded spousal support to appellant/cross-appellee.
On appeal appellant/cross-appellee, Peggy Grime Lauber, sets forth the following three assignments of error:
 "I. THE TRIAL COURT ERRED BY MAKING AN INEQUITABLE DIVISION OF MARITAL PROPERTY, INCLUDING THE FAILURE TO CONSIDER NEW EVIDENCE REGARDING THE PARTIES' TAX LIABILITY. * * *"
 "II. THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO THE PREJUDICE OF APPELLANT BY AWARDING APPELLANT AN INADEQUATE AMOUNT OF SPOUSAL SUPPORT OVER AN INSUFFICIENT PERIOD OF TIME. * * *"
 "III. THE TRIAL COURT ABUSED ITS DISCRETION BY NOT AWARDING ATTORNEY FEES TO APPELLANT-WIFE FOR THE POST-DIVORCE, REMAND PROCEEDINGS. * * *"
Appellee/cross-appellant, Franklin Grime, sets forth the following three cross-assignments of error:
 "1. APPELLEE'S CROSS-ASSIGNMENT OF ERROR I: THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING APPELLANT EXCESSIVE SPOUSAL SUPPORT FOR AN EXCESSIVE PERIOD OF TIME. * * *"
 "2. APPELLEE'S CROSS-ASSIGNMENT OF ERROR II: THE TRIAL COURT ABUSED ITS DISCRETION BY CONSIDERING NEW EVIDENCE IN THE FORM OF TAX RETURNS OF THE PARTIES FOR THE TAX YEARS 1995 THROUGH 2000, TO THE EXCLUSION OF ANY OTHER EVIDENCE NECESSARY TO MAKE A SPOUSAL SUPPORT DETERMINATION UNDER THE PROVISION OF R.C. SECTION 3105.18(C)(1). * * *"
 "3. APPELLEE'S CROSS-ASSIGNMENT OF ERROR III." THE TRIAL COURT ABUSED ITS DISCRETION BY CONSIDERING EVIDENCE OTHER THAN THAT CONTAINED IN THE RECORD OF THE TRIAL OF THIS MATTER SINCE PLAINTIFF-APPELLANT/CROSS-APPELLEE NEVER FILED A MOTION TO MODIFY THE TRIAL COURT'S ORDER FOR SPOUSAL SUPPORT SINCE THE TRIAL COURT RETAINED JURISDICTION OVER THIS ISSUE FOR A PERIOD OF SEVEN YEARS FROM SEPT. 25, 1995 TO SEPT. 28, 2002. * * *"
Appellant and appellee were married on February 4, 1972. Four children were born of the marriage. During the last nine years of their marriage, the parties owned and operated the Arch Motel in Archbold, Ohio, while living in a dwelling that was attached to the motel. During that time, appellant operated the motel and appellee worked next door at his family's business, D W Collision, to supplement the family income. In May 1993, appellant and appellee legally separated and appellant moved out of the marital residence. In August 1993, appellee purchased a home in Elmira for himself and the parties' remaining minor child, Suzanne.
After appellant left the marital residence, the motel was listed for sale with a real estate agent. The business was then operated by appellee's sister until April 1994, when the parties agreed that appellant would return to operate the motel.
On March 10, 1995, following a hearing, the trial court granted the parties a divorce, ordered appellee to pay temporary spousal support, and designated appellee as Suzanne's residential parent. The issues of division of marital property and spousal support were continued pending an evidentiary hearing. In May 1995, the court appointed a third party to operate the motel until it was sold several months later for $166,000. After the sale took place, $18,224 in proceeds was placed in an escrow fund.
On September 28, 1995, a hearing was held, at which testimony and evidence concerning the parties' financial situation was presented by appellant, appellee and appellant's father, Clint Lauber. Appellant testified at the hearing that she ran the motel for nine years without pay, and that the motel had never really been profitable without the extra income from appellee's job at D W Collision. Appellant further testified that her mother loaned the parties $25,000 which had never been repaid. Appellant stated that when she moved back to the motel in April 1994, the mortgage was several months in arrears, there were many outstanding bills, and she had to borrow $6,500 from her father to purchase a car. Appellant said she paid herself up to $300 per week for running the motel between April 1994 and May 1995, depending on whether or not she had to hire help to run the business.
Appellant testified that she was aware of an offer to buy the motel for $185,000 approximately 18 months before the property was actually sold; however, she did not think that offer was "firm." She further testified that no prospective buyers saw the motel in 1994 or 1995, and she did not allow the court-appointed operator to run the motel in the summer of 1995, because the bills had not been paid and the utilities had been turned off.
Appellant's father, Clint Lauber, testified at the hearing that appellant's mother loaned the parties $25,000 at no interest to allow appellant and appellee to pay off the second mortgage on the motel. Lauber further testified that the money was not a gift, and that the parties agreed to pay it back to appellant's mother "if she needed it."
Appellee testified at the hearing that, after he left the marital residence, he purchased a home in his oldest son's name for $58,000 and that he, Suzanne and another son, Gabe, lived in the home. He stated that he had outstanding bank loans in the approximate amounts of $43,960 (Loan No. 51503), which included $11,000 for the down payment on appellee's home and $12,000 in car loans, and $4,240 (Loan No. 51270), from which he paid interest on the motel mortgage. Appellee further stated that he sold his 1984 Corvette, his shares of stock in D W Collision were valued at $3,500, and he had two Individual Retirement Accounts (IRAs) in his own name, specifically, IRA Nos. 24148 and 96515, in amounts of $4,400 and $22,000, respectively, and IRA No. 73761, in both parties' names, in the amount of $7,500.
Appellee testified that he is responsible for all of Suzanne's expenses. He further testified that, in his opinion, the motel would have sold for $185,000 if appellant had agreed to sell it in 1994. Appellee stated that appellant refused to provide him with an accounting of the motel's income and expenses for the months she operated the motel after his sister moved out. Finally, appellee stated that he still owed his father $5,000 and he owned work tools worth approximately $2,000.
In addition to the above testimony, the court received evidence that appellant had a net income of $207 per week and appellee earned approximately $35,000 per year. The court also received evidence that, as of the date of the hearing, appellee had $8,000 of equity in the Elmira home, appellee's attorney fees of $7,634.50 had been paid out of the proceeds of the motel sale, and $2,487 in accounting fees relating to the motel sale and $5,634.50 of appellant's attorney fees remained unpaid.
On January 18, 1996, the trial court filed a judgment in which it ordered the unpaid accountant's fees and appellant's outstanding attorney fees to be paid out of the escrow fund. The court further found that appellant's actions in delaying the sale of the motel amounted to "financial misconduct" resulting in a loss of "close to $50,000." Thereafter, the court allocated the parties' remaining assets and financial liabilities as follows:
Appellee/Husband Appellant/Wife
D W Stock 3,560.00
1984 Corvette 8,500.00
IRA #24148 4,500.00
IRA #96515 22,100.00
IRA #73761 7,560.00
Elmira Home(equity) 8,000.00
Net Proceeds — sale of motel 4,500.69 5,551.81
Projected 1995 Tax Liability (17,400.00) (13,000.00)
Loan #51270 (4,320.65)
Loan #51503 (44,498.24)
___________ ___________
FINAL DISTRIBUTION ($7,448.20) ($7,448.19)
The court further found that "[e]ach of the parties should pay the balance of their attorney's fees individually."
The court found that neither party should be required to pay spousal support or child support to the other; however, it reserved jurisdiction to modify spousal support for seven years. The court did not allocate responsibility for the $25,000 loan made by appellant's mother.
A timely notice of appeal was filed. On appeal, appellant argued that the trial court abused its discretion by awarding appellee a greater share of the marital property; not characterizing the $25,000 given to the parties by appellant's mother as a marital debt; miscalculating the value of appellee's interest in D W Collision, and not awarding appellant any spousal support. Appellant also asserted that the trial court erred by finding that appellant committed "financial misconduct" and not finding that appellee engaged in similar misconduct by concealing and dissipating marital assets.
On November 22, 1996, this court issued a decision, in which we affirmed the judgment of the trial court as to the issues of valuation of the D W Collision stock and the trial court's finding that appellant committed some type of "financial misconduct." However, we found that the trial court abused its discretion by not characterizing the $25,000 loan to the parties by appellant's mother as a marital debt. In addition we found, based on a review of the record, that appellee's conduct contributed to the dissipation of marital assets. Finally, as to the issue of spousal support, we found that while the trial court addressed some of the factors required by R.C. 3105.18(C)(1), it neglected to address relevant factors such as the length of the parties' marriage, the disparity in their earning power, their retirement benefits, or lack thereof, and the years appellant operated the motel without pay. Accordingly, the case was remanded to the trial court for "a redetermination of the $25,000 loan, an equitable division of marital property and a determination of the amount of a reasonable spousal support award." Grime v. Grime (Nov. 22, 1996), Fulton App. No. F-96-006 ("GrimeI").
On December 12, 2000, the trial court filed a decision in which it found that the $25,000 loan from appellant's mother was a marital debt. In addition, the court found that Loan Nos. 51270 ad 51503 were "debts incurred by [appellee] due to financial `misconduct' and, therefore, were his debts alone, * * *."
Following the above reasoning, the trial court retained the values previously assigned to the parties' other assets and subtracted as marital debt only the $30,000 in outstanding projected tax liability from the sale of the motel. The court then divided the marital property equally by transferring an additional $24,409.44 in marital assets from appellee to appellant. However, the court further found that the $24,409.44 transfer should be "offset by the $25,000.00 (one-half of the total) loss experienced by [appellee] due to [appellant's] misconduct."
Finally, the trial court ordered the parties to submit copies of their respective income tax returns for 1995 through 2000, so that the court could determine the issue of spousal support. On May 17, 2001, the court found, based on the tax returns filed by the parties for 1995 through 1998, that there respective incomes were as follows:
Husband Wife
1995 $35,152.00 $5,339.00
1996 $39,852.00 $15,860.00
1997 $41,128.00 $13,824.00
1998 $42,200.00 $14,731.00
Based on the parties' incomes, a review of the record, and the application of "the relevant factors found in Section 3105.18(C)(1)," the trial court ordered appellee to pay spousal support for three months in the amount of $1,000 per month, and for 48 months in the amount of $600 per month.
On June 19, 2001, the trial court filed a judgment entry in which it adopted the above findings of fact and conclusions of law, ordered the parties to each repay one-half of the $25,000 loan to appellant's mother, offset the $24,409.44 due appellant from appellee by one-half of the $50,000 loss attributed to appellant's "financial misconduct," and ordered appellee to pay spousal support as set forth above. On July 17, 2001, a timely notice of appeal was filed.
Appellant asserts in her second assignment of error that the trial court abused its discretion by awarding her an inadequate amount of spousal support, both in amount and duration. Specifically, appellant asserts that the trial court erred by not considering that appellee was awarded virtually all of the parties retirement benefits, appellant operated the motel for nine years without pay during the marriage, and appellee did not pay any of the motel's operating expenses or debts during the 14 months appellant ran the motel on her own.
Similarly, appellee asserts in his first, second and third cross-assignments of error that the spousal support award was excessive both in amount and duration. Appellee further asserts that the court erred by basing the spousal support award on income figures obtained from the parties' income tax returns, which were not available at the time of the final divorce hearing.
The doctrine of the law of the case requires trial courts to follow the mandates of reviewing courts. Nolan v. Nolan (1984), 11 Ohio St.3d 1,3. In addition, "the trial court is without authority to extend or vary the mandate given." Nolan, supra at 4, citing Briggs v. PennsylvaniaRR. Co. (1948), 334 U.S. 304, 306. "Where a judgment is reversed, for error, and remanded for further proceedings, the cause may be taken up, by the court below, at the point where the first error was committed, and be proceeded with, as in other cases, to final judgment." Commissionersof Montgomery County v. Carey (1853), 1 Ohio St. 463, paragraph one of the syllabus.
As set forth above, this case was remanded to the trial court with the mandate to determine "the amount of a reasonable amount of a spousal support award." On remand, the only new evidence requested by the trial court was the parties' income tax returns, so that the actual income figures could "guide the Court" in making a spousal support determination. Therefore, as a preliminary matter, we find that the trial court's request for actual income figures from the parties' tax returns to be used in a determination of the spousal support award did not exceed the scope of our remand in Grime I. Nolan, supra.
As to the amount and duration of the award, it is well-settled that a trial court has broad discretion in determining spousal support. Kunklev. Kunkle (1990), 51 Ohio St.3d 64, 67; Cherry v. Cherry (1981),66 Ohio St.2d 348, 355. A reviewing court may not substitute its judgment for that of the trial court, absent a finding of an abuse of discretion. Kunkle, supra; Holcomb v. Holcomb (1989), 44 Ohio St.3d 128,131. An abuse of discretion is more than a mere error of law; "it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
The primary purpose of a spousal support award is to provide for the financial needs of an ex-spouse. Moell v. Moell (1994),98 Ohio App.3d 748, 751. Pursuant to R.C. 3105.18(C)(1), in determining the necessity for and amount of spousal support, the trial court must consider the fourteen factors provided therein, including, but not limited to: 1) the relative earning abilities of the parties, 2) the ages and physical, mental, and emotional conditions of the parties, 3) the retirement benefits of the parties, 4) the duration of the marriage, 5) the standard of living of the parties established during the marriage, 6) the relative education of the parties, 7) the relative assets and debts of the parties, including but not limited to any court-ordered payments by the parties, 8) the tax consequences for each party of an award of spousal support, or 9) any other factor that the court expressly finds to be relevant and equitable. Id.
On remand, the trial court made findings that the parties were married for twenty-two years, and there was "some disparity between the earning abilities of the parties." The court further found that appellant had "waived" her right to spousal support during the fourteen months she had "opted" to operate the motel after the parties' separation. Accordingly, the court found that appellant was entitled to spousal support as set forth above.
In addition to the above findings, the trial court had before it the findings made in its original judgment entry as to the parties' employment, custodial arrangements for the parties' minor child, the extent of the parties' debts, and evidence as to the ramifications of appellee cashing in the IRAs to pay off said debt. Those findings were not disturbed on appeal in Grimes I and are not challenged by the parties in this appeal. Our review of the record further demonstrates that, although appellee did not contribute to paying the debts and expenses of the motel during appellant's final 14 months as operator, appellant paid herself a salary during that time and any remaining motel debts were either paid from the sale proceeds or were subject to allocation between the parties by the trial court.
Upon consideration of the foregoing, we cannot say that the trial court abused its discretion when it ordered appellee to pay appellant spousal support for a period of three months at $1,000 per month and for 48 months at $600 per month. Appellant's second assignment of error and appellee's first, second and third cross-assignments of error are not well-taken.
In her first assignment of error, appellant asserts that the trial court abused its discretion by making an "inequitable division of marital property." Specifically, appellant argues that the trial court erred by finding, on remand, that the transfer of $24,409.44 from appellee to appellant should be offset by $25,000 of the losses caused by appellant's "financial misconduct." Appellant further argues that the trial court should have used the parties' actual tax liability from the motel sale, as stated on their respective parties' income tax returns to determine appellee's spousal support obligation.
Pursuant to R.C. 3105.171(C), the division of marital property is to be equal, unless such a division would produce an inequitable result. In such a case, marital property is to be divided on an equitable basis.Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355. A trial court's division of marital property will not be reversed on appeal absent an abuse of discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 130;Martin v. Martin (1985), 18 Ohio St.3d 292, 294-295.
In Grime I, we found that the record contained some competent, credible evidence that appellant's "intractability" resulted in a loss of approximately $50,000 from the sale of the motel. We also found that appellee's actions contributed to the parties' financial difficulties through the dissipation of marital funds. We concluded that, even after "disregarding the liabilities incurred by both of these parties through the dissipation of funds," the trial court abused its discretion by making an inequitable division of marital assets in favor of appellee. Accordingly, on remand, we instructed the court to make "an equitable division of marital property."
On remand, the trial court did not change the valuation of any of the marital assets. It did, however, completely disregard Loan Nos. 51270 and 51503 in allocating the marital debts, without determining what portion, if any, of those loans was marital debt and what was attributable solely to appellee's actions. In addition, it is undisputed that the amount of the parties' actual tax liabilities due to the motel sale was available through their tax returns. Nevertheless, the trial court used their projected tax liability in re-dividing the marital assets on remand.
Upon consideration, this court finds that the trial court did not follow our mandate to disregard the liabilities incurred due to the financial misconduct of both parties and thereafter make an equitable division of the marital property. Further, in attempting to divide the marital property, the court erred by not determining what portion, if any, of Loan Nos. 51270 and 51503 were attributable solely to appellee's conduct, and by not using the parties' actual tax liability for the motel sale to determine the value of the marital property. Accordingly, the trial court abused its discretion and appellant's first assignment of error is well-taken.
Appellant asserts in her third assignment of error that the trial court erred by not awarding her attorney fees. Appellee argues that the issue of attorney fees is beyond the scope of our remand and, in any case, the trial court did not abuse its discretion by refusing to award post-divorce attorney fees to appellee.
The record reflects that appellant raised the issue of attorney fees in a brief filed as part of the remand proceedings, and appellee opposed such an award. The trial court ultimately addressed the issue by ordering each party to pay his or her own attorney fees. Accordingly, the issue is properly before this court.
Pursuant to R.C. 3105.18(H), the trial court may award reasonable attorney fees in a divorce proceeding if it:
"determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees." Id.
In addition, the trial court's determination "should take into consideration * * * the earning abilities of the parties and the relative assets and liabilities of each." Birath v. Birath (1988),53 Ohio App.3d 31, 39. A decision to award or not award attorney fees lies within the sound discretion of the trial court. Rand v. Rand
(1985), 18 Ohio St.3d 356, 359; Parzynski v. Parzynski (1992),85 Ohio App.3d 423.
In its decision issued on May 15, 2001, the trial court summarily stated that "[e]ach party shall be responsible for his and her own attorney's fees." The court made no mention of the impact of the parties' earning abilities and relative assets and liabilities on the need for attorney fees, and did not make a finding as to whether appellant would be prevented from fully litigating her rights and adequately protecting her interests without an attorney fee award.
Upon consideration, this court finds that the trial court did not articulate sufficient facts to enable us to review its denial of post-divorce attorney fees. To the extent that such facts are necessary for our review, appellant's third assignment of error is well-taken.
The judgment of the Fulton County Court of Common Pleas is hereby affirmed in part and reversed in part. The case is remanded to the trial court for the specific purposes of: 1) a determination as what portion, if any, of Loan Nos. 51270 and 51503 are attributable solely to appellee and what portions, if any, are marital debt to be allocated between the parties; 2) a determination as to the actual tax liability of each of the parties that is attributable to the sale of the motel, as stated on their respective income tax returns; 3) a division of marital property based on the court's determination of the marital debts as set forth above and the value of their remaining assets; and 4) findings of fact in support of the trial court's decision to order both parties to pay their own post-divorce attorney fees. Court cost of this appeal are assessed equally to the parties.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
Peter M. Handwork, J., Melvin L. Resnick, J. and Mark L. Pietrykowski, P.J. CONCUR.